## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AALIYAH RENEE JONES,

                              Plaintiff,

vs.                                                          CASE NO.:

                                                             **JURY TRIAL DEMANDED**

CRIMINALWATCHDOG, INC.

                              Defendant.

## COMPLAINT

Plaintiff Aaliyah Renee Jones ("Plaintiff"), by and through her undersigned counsel, brings this Complaint against CriminalWatchDog, Inc. ("Defendant" or "CriminalWatchDog") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* arising out of an employment background check report that falsely portrayed Plaintiff as a serial thief and misdemeanant.

## INTRODUCTION

1.      This is an individual action for damages, costs and attorneys' fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendant falsely reported to Plaintiff's prospective employer that she is a serial thief and misdemeanant. Defendant's report was grossly inaccurate and untrue. Plaintiff is not a misdemeanant and has *never* been charged with a crime in her life. Plaintiff's prospective employer initially decided not to hire Plaintiff after receiving an employment report from Defendant which included three inaccurate criminal convictions that do not belong to Plaintiff.

4.      Defendant's inaccurate employment report could have been easily remedied had Defendant consulted widely available current public court records prior to publishing Plaintiff's report to her prospective employer in the first place.

5.      Defendant does not employ or follow reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ or follow reasonable procedures resulted in it reporting three misdemeanors in Plaintiff's employment background check report, which belong to an unrelated consumer who has a completely different middle name than Plaintiff.

6.      Defendant's inaccurate report initially cost Plaintiff a promising, well-paying job, causing her to suffer a range of actual damages, including but not limited to, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money trying to correct her inaccurate employment report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment.

7.      Accordingly, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer report, in violation of the FCRA, 15 U.S.C. § 1681e(b).

8.      As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs

and attorneys' fees from Defendant for its willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, as described herein.

**THE PARTIES**

9.      Plaintiff Aaliyah Renee Jones ("Plaintiff") is a natural person who resides in New Bern, North Carolina, and is a consumer as that term is defined in 15 U.S.C. § 1681a(c).

10.      Defendant CriminalWatchDog, Inc. ("Defendant" or "CriminalWatchDog") is a corporation with a principal place of business located at 303 Wyman Street, Suite 300, Waltham, Massachusetts, and is authorized to do business in the State of Massachusetts, including in this District.

11.      Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**JURISDICTION AND VENUE**

12.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

**STATUTORY BACKGROUND**

14.      Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or for credit, and when they applied for housing.  Second, despite

their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

15.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

16.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

17.    Consumer reports that contain factually incorrect information belonging to an entirely different consumer are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

**THE FCRA'S PROTECTIONS FOR JOB APPLICANTS**

18.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

19.    The FCRA provides a number of protections for job applicants who are subjected to background checks.

20.    In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like CriminalWatchDog, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

21.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## FACTS

**CriminalWatchDog Publishes an Inaccurate Employment Report to Plaintiff's Prospective Employer**

22.    In or about early January 2022, Plaintiff began looking for full-time employment and submitted an employment application for the open Customer Service Representative position with Ashley Furniture Homestore Outlet ("Ashley Homestore"), a retail chain with a variety of signature home furniture, décor, and accessories located in New Bern, North Carolina.

23.    In or about early January 2022, shortly after submitting her employment application, Plaintiff completed an interview with representatives of Ashley Homestore who thereafter communicated to Plaintiff an offer for full-time employment as a Customer Service Representative, contingent upon passing a background check, which Plaintiff accepted.

24.    Plaintiff was particularly excited about the job opportunity at Ashley Homestore and considered it an ideal job for her because it was a full-time position that paid well at $12.00 per hour, which was $2.00 more per hour than she was making previously and offered multiple opportunities for advancement within the company.

25.    Plaintiff was informed by representatives of Ashley Homestore that they would contact her about her official start date as soon as they confirmed she passed the background check.

26.    Ashley Homestore contracted with CriminalWatchDog to conduct background checks, including criminal background checks, on its prospective employees.

27.    On or about January 15, 2022, Ashley Homestore ordered Plaintiff's employment report from Defendant.

28.    On or about January 15, 2022, in accordance with its standard policies and procedures, Defendant completed Plaintiff's employment report and published that report to Ashley Homestore.

29.     Defendant's report was grossly inaccurate. Specifically, it contained the following

three (3) stigmatizing misdemeanor convictions from Wake County, North Carolina:

    i.  Jurisdiction State:        NC
        Jurisdiction County:       Wake
        Found In:                  NC STATEWIDE WAKE
        CaseNumber:                2014CR220823
        Case Year:                 2014
        Court:                     CR

        Defendant Name:            AALIYAH LANAE JONES
        Defendant Address:         5420 Portree Place, Raleigh, NC 27606
        Defendant DOB:             07/18/****
        Charge Type:               MISDEMEANOR
        Charge Description:        CONTRIBUTING DEL OF JUVENILE
        Offense Date:              9/7/2014
        Disposition Date:          2/29/2016
        Trial Date:                4/11/2017
        Verdict Description:       GUILTY

        Charge Type:               MISDEMEANOR
        Charge Description:        MISDEMEANOR LARCENY
        Offense Date:              9/7/2014
        Disposition Date:          2/29/2016
        Trial Date:                4/11/2017
        Verdict Description:       GUILTY
        Consolidated Judgment File: 14CR 220823 01

    ii.  Jurisdiction State:        NC
        Jurisdiction County:       Wake
        Found In:                  NC STATEWIDE WAKE
        CaseNumber:                2016CR212056
        Case Year:                 2016
        Court:                     CR

        Defendant Name:            AALIYAH LANAE JONES
        Defendant Address:         3924 Haresnipe Ct, Raleigh, NC 27613
        Defendant DOB:             07/18/****
        Charge Type:               MISDEMEANOR
        Charge Description:        MISDEMEANOR LARCENY
        Offense Date:              6/14/2016
        Disposition Date:          10/3/2016
        Trial Date:                3/13/2018
        Verdict Description:       GUILTY

30.     The above-listed misdemeanor convictions <u>do not belong to Plaintiff</u>. Plaintiff has never been convicted of a crime in her life.

31.     A cursory review of the three (3) misdemeanor criminal convictions as reported in the underlying public court records from Wake County, North Carolina confirms that the records belong to an unrelated female living in Raleigh, North Carolina named Aaliyah *Lanae* Jones ("Convicted Misdemeanant Aaliyah Lanae Jones"). Had Defendant actually consulted or obtained the widely available underlying public court records, it would have seen obvious discrepancies between Convicted Misdemeanant Aaliyah Lanae Jones and Plaintiff.

32.     The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Misdemeanant Aaliyah Lanae Jones include the following:

(i)      Plaintiff's full name is Aaliyah ***Renee*** Jones, yet the misdemeanor convictions reported by Defendant belong to Aaliyah ***Lanae*** Jones, which is in the widely available public court records;

(i)      Plaintiff's address history, as indicated in the employment report, confirms that she resides in New Bern, North Carolina, while Convicted Misdemeanant Aaliyah Lanae Jones' address is listed in the underlying court records as Raleigh, North Carolina;

(ii)     Plaintiff's address history indicates that she has never lived in Wake County, North Carolina, yet the crimes associated with the three (3) misdemeanor convictions were committed in Wake County;

(iii)    At the time Convicted Misdemeanant Aaliyah Lanae Jones committed her crimes in 2014 and 2016, Plaintiff was living in Rehoboth Beach, Delaware, which is 345 miles from Wake County, North Carolina, and in New Bern,

North Carolina, which is 115 miles from Wake County, North Carolina, respectively;

(iv)    Plaintiff's Social Security number, which was provided to Defendant prior to its preparation of her employment report, is different from Convicted Misdemeanant Aaliyah Lanae Jones' Social Security number; and

(v)    Plaintiff has never been charged with or convicted of a crime in Wake County, North Carolina, or in any other county in the United States.

33.    The sole reason the three (3) stigmatizing misdemeanor convictions were reported as belonging to Plaintiff is that Defendant failed to follow or use reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's employment report in violation of 15 U.S.C. § 1681e(b). Had Defendant used reasonable procedures, it would have discovered that the inaccurate stigmatizing misdemeanor convictions belonged to an unrelated person with a completely different middle name and address.

**Plaintiff's Employment with Ashley Homestore is Delayed as a Direct Result of Defendant's Inaccurate Employment Report**

34.    On or about January 15, 2022, Plaintiff received written correspondence from Defendant informing her that it had reported "matters of public record" regarding her to Ashley Homestore.

35.    Shortly thereafter, Plaintiff contacted a representative of Ashley Homestore and inquired about the contents of her employment report. The representative informed Plaintiff that her employment report contained multiple criminal records and, consequently, Ashley Homestore was rescinding its prior offer of employment.

36.    Upon hearing this from the Ashley Homestore representative, Plaintiff was shocked, confused, and appalled. Plaintiff pleaded with the representative, stating that the criminal

records did not belong to her. Despite Plaintiff's efforts, Ashley Homestore's representative informed Plaintiff that, pursuant to company policy, it could not reconsider her employment candidacy until the crimes reported were removed from her background check report.

**Plaintiff Disputes the Inaccurate Employment Report with Defendant**

37.     On or about January 16, 2022, worried that Defendant would continue to publish inaccurate employment reports about her to future employers, Plaintiff placed a telephone call to Defendant and disputed the three (3) misdemeanor convictions contained in her employment report.

38.     On or about January 17, 2022, Defendant removed the inaccurate criminal records from Plaintiff's employment report. By the time Defendant corrected Plaintiff's employment report, Plaintiff's employment candidacy with Ashley Homestore had already been initially terminated and Plaintiff's eventual official start date was delayed by over a week as a result of Defendant's inaccurate report.

39.     As a result of Defendant's conduct, action, and inaction, Plaintiff has suffered a range of actual damages, including but not limited to, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; loss of time and money trying to correct her employment report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including stress; anxiety; mental anguish, frustration, humiliation, and embarrassment.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

40.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

41.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. (CFPB Report at 4.)

42.     The criminal background check industry takes in revenues of $3 billion a year and is growing.[2]

43.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

44.     Background check companies collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

45.     Defendant is well aware of the FCRA and has been sued multiple times for reporting inaccurate or outdated information.

46.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

47.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

48.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for reports that are accurate.

49.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting three (3) criminal convictions and records that belong to an unrelated person with a completely different middle name.

50.     Defendant is aware of the FCRA requirements as it claims to "strictly adhere to the guidelines established in the FCRA" on its website.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

51.     Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-50 as if fully stated herein.

52.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

53.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

54.     At all times pertinent hereto, the above-mentioned employment report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

55.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of Plaintiff's employment report and the files it published and maintains.

56.     As a result of Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered a range of actual damages, including without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advances in the future; the expenditure of time and money trying to correct Defendant's erroneous employment report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, stress, anxiety, fear, frustration, humiliation, and embarrassment.

57.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

58.     In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

59.     Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a.  Determining that Defendant negligently and/or willfully violated the FCRA;

b.  Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

c.  Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

60. Plaintiff demands a trial by jury.


Dated: June 15, 2023                    **BERGER MONTAGUE PC**

/s/ Julie S. Selesnick
Julie Selesnick, MA BBO No. 650968
BERGER MONTAGUE PC
2001 Pennsylvania Avenue, Suite 300
Washington D.C. 20006
Telephone: (202) 221-5279
Fax: (215) 875-4604
Email: jselesnick@bm.net

Hans W. Lodge, MN Bar No. 397012*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
Email: hlodge@bm.net
*Pro Hac Vice Forthcoming*

*ATTORNEYS FOR PLAINTIFF*